**PELTON GRAHAM LLC**
Brent E. Pelton, Esq.
Taylor B. Graham, Esq.
Alison L. Mangiatordi, Esq.
111 Broadway, Suite 1503
New York, NY 10006
Telephone: (212) 385-9700
www.peltongraham.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **MARIO RODRIGUEZ, Individually and On Behalf of All Others Similarly Situated,**<br><br>**Plaintiff,**<br><br>-against-<br><br>**GENSERVE, INC., GENERATOR HOLDING CORPORATION, ROBERT FORTUNATO, MICHAEL VAHLING, and JOSEPH FLYNN, Jointly and Severally,**<br><br>**Defendants.** | **CLASS AND COLLECTIVE ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiff Mario Rodriguez, individually and on behalf of the putative collective and class members, as collective and class representative, upon personal knowledge as to himself and upon information and belief as to other matters, alleges as follows:

## NATURE OF THE ACTION

1.     Plaintiff was a generator technician and field service engineer who worked for Defendants' generator contracting business performing maintenance, repair, servicing, and replacement duties on commercial generators and generator components and automatic transfer switches.

1

2.      Plaintiff and similarly situated employees worked on public and private projects throughout the state of New Jersey.

3.      Plaintiff and similarly situated employees were not paid the prevailing rate of wages or supplemental benefits for their work on public works projects, including certain hospitals, schools, prisons, train stations and libraries.

4.      Plaintiff seeks to recover unpaid prevailing wages, daily overtime and supplemental benefits under the New Jersey Prevailing Wage Act, N.J.S.A. § 34:11-56.25 *et seq.* ("NJPWA") which he and the members of the putative Class were entitled to receive for work they performed pursuant to contracts entered into between Defendants and public entities.

5.      Plaintiff also brings this action to recover unpaid overtime premium pay owed to him and similarly situated employees pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the New Jersey State Wage and Hour Law, N.J.S.A. § 34:11-56a4 *et seq.* ("NJWHL"), and N.J.S.A. § 34:11-56a25 *et seq.* for time worked after their shifts at home or in their cars to fill out reports for which they were not compensated.

6.      Plaintiff brings his FLSA claims on behalf of himself and all other similarly situated generator technicians or field service engineers who performed work for Defendants in New Jersey.

7.      Plaintiff brings his NJWHL for claims on behalf of himself and a Federal Rule of Civil Procedure ("FRCP") 23 class of all employees of Defendants in New Jersey working as generator technicians, field service engineers and all other employees who performed maintenance, service and repair work on commercial generators over the six (6) year period preceding the filing of this complaint.

2

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337, and 1343, and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.  In addition, the Court has jurisdiction over Plaintiff's claims under the FLSA pursuant to 29 U.S.C. § 216(b).

9.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the event or omissions giving rise to the claim occurred in this district.

10.      This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

*Plaintiff*:

11.      Plaintiff Mario Rodriguez ("Rodriguez" or "Plaintiff") was, at all relevant times, an adult individual residing in New Milford, Bergen County, New Jersey.

12.      Plaintiff worked for Defendants throughout the state of New Jersey, based out of their shop located at 341 Kaplan Drive, Unit # 1, Fairfield, New Jersey 07004 (the "Shop"); Plaintiff also worked out of Defendants' headquarters and shop located at 100 Newtown Road, Plainview, NY 11803.

*Defendants*:

13.      Upon information and belief, Defendant GenServe, Inc. is an active New York corporation with headquarters located at 100 Newtown Road, Plainview, New York 11803.

14.      Upon information and belief, Defendant Generator Holding Corporation (collectively with GenServe, Inc., "Genserve" or the "Corporate Defendants") is an active

3

Delaware corporation with its principal place of business located at 100 Newtown Road, Plainview, New York 11803.

15.    Defendant Robert Fortunato ("Fortunato") is listed as the Chief Executive Officer of GenServe, Inc. in corporate filings with the New York Department of State, Division of Corporations and as the Chairman and CEO on GenServe's website, at http://www.genserveinc.com/management.

16.    Defendant Michael Vahling ("Vahling") is listed as the Vice President of Operations on GenServe's website, at http://www.genserveinc.com/management.

17.    Defendant Joseph Flynn ("Flynn" and, collectively with Fortunato and Vahling, the "Individual Defendants") is listed as the Chief Financial Officer on GenServe's website, at http://www.genserveinc.com/management.

18.    Upon information and belief, the Individual Defendants are owners and operators of GenServe who set the business's payroll policies, including the unlawful practices complaint of herein.

19.    Upon information and belief, throughout the relevant time period the Individual Defendants were in charge of determining the business's policies with respect to payroll and otherwise running the business of GenServe.

20.    The Individual Defendants participated in the day-to-day operations of GenServe and acted intentionally and maliciously in their direction and control of Plaintiff and GenServe's other similarly situated employees, and are each an "employer" pursuant to the FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as NJWHL § 34:11-4.1 and the regulations thereunder, and are jointly and severally liable with the Corporate

4

Defendant.

21.     All actions and omissions described in this complaint were made by Defendants

directly or through their supervisory employees and agents.

## FLSA COLLECTIVE ACTION ALLEGATIONS

22.     Pursuant to 29 U.S.C. § 207, Plaintiff brings his First Cause of Action as a collective

action under the FLSA on behalf of himself and the following collective:

> All persons employed by Defendants at any time since October 1,
> 2014 and through the entry of judgment in this case (the "Collective
> Action Period") who worked as generator technicians, field service
> engineers, and all other employees who performed maintenance,
> service and repair work on commercial generators in New Jersey
> (the "Collective Action Members").

23.     A collective action is appropriate in this circumstance because Plaintiff and the

Collective Action Members are similarly situated, in that they were all subjected to Defendants'

illegal policies including, but not limited to failing to pay overtime premium pay for all hours

worked over forty (40) in a given workweek.

24.     Plaintiff and the Collective Action Members have substantially similar

compensation structures.

## NEW JERSEY CLASS ACTION ALLEGATIONS

25.     Pursuant to the NJPWA and NJWHL, Plaintiff brings his Second through Fifth

Causes of Action under Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and

the following class:

> All persons employed by Defendants in New Jersey at any time
> since October 1, 2011 and through the entry of judgment in this case
> (the "Class Period") who worked as generator technicians, field
> switch engineers and all other employees who performed
> maintenance, service and repair work on commercial generators (the
> "Class Members").

5

26.     This action is properly maintainable as a class action pursuant to the New Jersey Rules of Court § 4:32, N.J. Stat. § 34:11-56.A25, and N.J. Stat. § 34:11-56.40 ("Any workman shall be entitled to maintain [an action for underpayment of prevailing wages] for and on behalf of himself or other workmen similarly situated, and such workman and workmen may designate an agent or representative to maintain such action for and on behalf of all workmen similarly situated.")

27.     The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants.

28.     The Class Members are so numerous that joinder of all members is impracticable. Although the precise number of Class Members is unknown to Plaintiff, the facts on which the calculation of that number can be based are presently within the sole control of Defendants.

29.     Upon information and belief, there are in excess of forty (40) Class Members.

30.     Common questions of law and fact exist as to all Class Members and such questions predominate over any questions solely affecting individual Class Members. Such common questions will determine Defendants' liability to all (or nearly all) Class Members. These common questions include:

a.   whether Defendants employed Plaintiff and the Class Members within the meaning of the NJWHL and NJPWA;

b.   whether Defendants failed to keep true and accurate time records for all hours worked by Plaintiff and the Class Members;

c.   whether Defendants failed to pay overtime wages to Plaintiff and the Class Members

6

for all hours worked over forty (40) in a given week;

d.  whether Defendants breached contracts with local, state and/or federal governmental entities by failing to pay Plaintiff and the Class Members, who were third-party beneficiaries of such contracts, at New Jersey prevailing wage rates;

e.  whether Defendants failed and/or refused to pay Plaintiff and the Class Members overtime hours at the prevailing wage overtime rates for all hours worked on prevailing wage projects in excess of forty (40) hours per workweek or eight (8) hours per day;

f.  whether Defendants failed and/or refused to pay Plaintiff and the Class Members supplemental benefits on prevailing wage jobs as required by the New Jersey prevailing wage schedules;

g.  whether Defendants were unjustly enriched by failing to pay Plaintiff and the Class Members at prevailing wage rates on prevailing wage jobs;

h.  whether Defendants' failure to properly pay Plaintiff and the Class Members lacked a good faith basis; and

i.  whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory damages, liquidated damages, interest, costs and disbursements and attorneys' fees.

31.  Plaintiff's claims are typical of the Class Members' claims. Plaintiff, like all Class Members, is an employee who performed maintenance, service and repairs on commercial generators and who worked for Defendants pursuant to their corporate policies. Plaintiff, like all Class Members, was, *inter alia*, not paid overtime wages for all hours worked over forty (40) in a given workweek; not paid prevailing wages, supplemental benefits or daily/weekly overtime

7

prevailing wages for work performed on Public Works Projects. If Defendants are liable to the Plaintiff for the Class claims enumerated in this Complaint, they are also liable to all Class Members.

32.     <u>The Plaintiff and his Counsel will fairly and adequately represent the Class</u>. There are no conflicts between Plaintiff and the Class Members, and the Plaintiff brings this lawsuit out of a desire to help all Class Members, not merely out of a desire to recover his own damages.

33.     Plaintiff's counsel are experienced class action litigators who are well-prepared to represent the interests of the Class Members.

34.     <u>A class action is superior to other available methods for the fair and efficient adjudication of this litigation</u>. Defendants are sophisticated parties with substantial resources. The individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in court against the Corporate Defendants. The individual members of the Class have no interest or capacity to bring separate actions; Plaintiff is unaware of any other litigation concerning this controversy; it is desirable to concentrate the litigation in one case; and there are no likely difficulties that will arise in managing the class action.

<b><u>STATEMENT OF THE FACTS</u></b>

**A.     New Jersey Prevailing Wage**

35.     Pursuant to N.J. Stat. §§ 34:11-56.27; 34:11-56.28, the prevailing wage rate must be paid to all workmen on the projects such as the Plaintiffs and other members of the putative class.

36.     The "prevailing rate of wage" is the rate of wage paid in the locality by virtue of collective bargaining agreements between bona fide labor organizations and employers of the

8

private sector. *See* N.J. Stat. §§ 34:11-56.27; 34:11-56.28.

**B.     Defendants' Company**

37.     At all relevant times, GenServe has been in the generator servicing business.  Upon information and belief, Defendants currently own, operate and manage GenServe from the Shop located at 100 Newtown Road, Plainview, New York 11803.

38.     Upon information and belief, and according to Defendants' website at http://www.genserveinc.com/contact-genserve, Defendants have three (3) main offices, located in Plainview, New York; Fairfield, New Jersey; and Pennsauken, New Jersey.

39.     Upon information and belief, employees based out of all three (3) offices perform work on New Jersey public works projects.

40.     According to Defendants' website at http://www.genserveinc.com/genserve-news/5-about-genserve/news/22-new-owners-see-bright-future-for-generators, GenServe has operated since in or around 1990.

41.     Upon information and belief, and according to Defendants' website at http://www.genserveinc.com/genserve-news/5-about-genserve/news/22-new-owners-see-bright-future-for-generators, Defendant Fortunato is a co-found and partner in Anvil Capital LLC, a private equity firm, which acquired or otherwise gained ownership of GenServe in or around early 2009.

42.     According to corporate filings with the state of Delaware, Defendant Generator Holding Corporation was formed on or about December 12, 2008.

43.     Upon information and belief, GenServe Inc. is or has been a subsidiary of Generator Holding Corp.

44.     The website of Anvil Capital, http://www.anvilcap.com/portfoliocompanies.html, lists Generator Holding Corporation—"d/b/a GenServe," its location shown as Plainview, New York and its website shown as www.genserveinc.com—as belonging to the "Current Portfolio" of Anvil Capital.

45.     Upon information and belief, GenServe Inc. is also a "portfolio company" of Anvil Capital, LLC or is otherwise owned in whole or in part, directly or indirectly, by Anvil Capital and/or Defendant Fortunato.

46.     According to GenServe's website, at http://www.genserveinc.com/about-genserve, "GenServe has been providing superior industrial generator sales and service for two decades and has grown to be the largest company in the metro area… [w]ith more than 45 trucks on the road…"

47.     Upon information and belief, and according to GenServe's website at http://www.genserveinc.com/management, Defendant Vahling and Defendant Flynn are, respectively, the Vice President of Operations and the Chief Financial Officer of GenServe.

48.     Upon information and belief, Defendant Vahling and Defendant Flynn have offices at GenServe's Shop in Plainview, New York.

49.     Upon information and belief, the Defendant Vahling is present at GenServe's Fairfield Shop on a weekly basis.

**C.     The Public Works Contracts**

50.     Upon information and belief, Defendants have entered into certain contracts, as either a subcontractor or prime contractor, with public agencies to provide generator maintenance, servicing, repair and replacement work on government projects and at government-funded buildings within the state of New Jersey (the "Public Works Projects"), including, but not limited

10

to, the Veterans Affairs Hospital at Lyons and East Orange, Rutgers' University, New Jersey train stations, New Jersey Sewer Department, Clinton Water & Sewer, Woodbridge Public Library, and the Carteret Public Library, and municipalities throughout New Jersey State, or with prime contractors including but not limited to Johnson Controls, Inc. to furnish labor, material and equipment to perform work on the Public Works Projects (the "Public Works Contracts").

51.     Upon information and belief, the Public Works Contracts obligated Defendants to pay Plaintiff and the Class Members at or above the local prevailing wage rates, including any required supplemental benefits and overtime premiums for hours worked in excess of forty (40) hours per week, eight (8) hours per day, hours worked on Saturday and Sunday and hours worked during the evening. Defendants' failure to pay Plaintiff proper prevailing wage rates, supplemental benefits and overtime premiums was a corporate policy that also applied to all of Defendants' other similarly situated employees.

52.     As employees of Defendants who were assigned to work on Defendants' publicly-financed projects, Plaintiff and the Class Members were intended third-party beneficiaries of Defendants' Public Works Contracts.

53.     Upon information and belief, pursuant to New Jersey Statute §§ 34:11-56.27; 34:11-56.28, each of the Public Works Contracts for work to be performed in New Jersey contained a provision specifying the prevailing wage rate to be paid to all workmen on the Public Works Projects and mandating the payment of same to Plaintiff and other members of the putative class.

54.     A schedule containing the prevailing rates of wages and supplemental benefits ("prevailing wage schedules") to be paid to the plaintiff Class should have been annexed to and

11

formed a part of the Public Works Contracts. If not annexed to the Public Works Contracts, these schedules were expressly or impliedly incorporated into the contracts as a matter of law and/or public policy.

55.     The promise to pay and ensure payment of the prevailing wage and supplemental benefit rate stated in the Public Works Contracts was made for the benefit of all workers furnishing labor on the sites of the Public Works Projects and, as such, the workers furnishing labor on the sites of the Public Works Projects are the beneficiaries of that promise and the contracts entered into between Defendants and government agencies.

56.     Upon information and belief, in furtherance of the Public Works Contracts entered into by Defendants, Plaintiffs and other members of the putative Class performed various generator servicing, maintenance, repair and replacement services including: changing the oil or radiator in generator engines, cleaning generator components, replacing filters, repairing and replacing generator components, inspecting generators, performing generator load tests, testing and repairing automatic transfer switches, maintaining generator cooling systems, installing rental generators, laying down cables for generators, taking oil and coolant samples and tightening generator belts and rings.  Plaintiffs worked with tools and equipment including ratchets, wrenches, voltmeters, filters, gaskets, pumps, refractometers and electric lifts.

57.     Upon information and belief, Plaintiffs should have been paid at the prevailing rate of wages (including supplemental benefits) of "Operating Engineers," which title applies to "generator (2 or 3 battery)" from the New Jersey Department of Labor and Workforce Development Prevailing Wage Rate Determination for the county in which they were performing work on Public Works Projects at the time, including the following rates listed for all counties:

12

a. October 1, 2011 through June 30, 2013: $38.58 plus $27.58 in fringe benefits for a total of $66.10 per hour; [1]

b. July 1, 2013 through June 30, 2014: $39.57 plus $29.08 in fringe benefits for a total of $68.65 per hour (with an increase to a total of $69.90 per hour starting January 1, 2014);

c. July 11, 2014 through June 30, 2015: $41.57 plus $29.33 in fringe benefits for a total of $70.90 per hour;

d. July 1, 2015 through present: $47.07 plus $30.70 in fringe benefits for a total of $77.77 per hour (with an increase to a total of $77.77 per hour January 1, 2018);

**D.    Plaintiff's Work for Defendants**

58.    Plaintiff Rodriguez worked for Defendants as a generator technician/field service engineer from in or around 2011 through in or around June 13, 2017 (the "Rodriguez Employment Period").

59.    Rodriguez worked for Defendants out of their Plainview office from the beginning of the Rodriguez Employment Period through in or around 2011, and then moved to Defendants' Fairfield, New Jersey office for the remainder of the Rodriguez Employment Period.

60.    In the beginning of the Rodriguez Employment Period, Rodriguez was paid approximately thirty dollars ($30) per hour, which went up approximately one dollar ($1) per hour each year, with a final wage of approximately thirty-five dollars and seventy-six cents ($35.76).

61.    Throughout the Rodriguez Employment Period, Rodriguez typically worked between seventy and seventy-five (70-75) hours per week.

---

[1] The rates listed below are those of "Operating Engineers," which title applies to "generator (2 or 3 battery)" from the New Jersey Department of Labor and Workforce Development Prevailing Wage Rate Determination.

13

62.     From in or around 2012 and throughout the remainder of the Rodriguez Employment Period, Rodriguez typically worked on Public Works Projects in New Jersey such as Rutgers University, New Jersey schools, prisons, the Veterans Affairs hospital for approximately three (3) to four (4), eight (8) hour days per month.

63.     For these projects, Rodriguez was not paid at the prevailing wage rate of pay but, rather, was paid at his regular rate of pay.

64.     At all relevant times, Plaintiff and similarly situated employees performed generator and automatic transfer switch maintenance, servicing, repair and replacement duties for Defendants in New Jersey.   Throughout their respective employment periods, Plaintiff and similarly situated employees performed work on numerous New Jersey buildings including but not limited to Rutgers University, public schools, public prisons, hospitals, sewer departments, train stations, public libraries.

65.     Plaintiff and similarly situated employees work as generator technicians and field service engineers.  Field service engineers perform largely the same duties as generator technicians except that field service engineers also work on automatic transfer switches, which is a device that connects to the generator and switches a building's power from utility power to generator power.

66.     Plaintiff and similarly situated employees perform service calls as well as scheduled work on long-term contracts.  Plaintiff and similarly situated employees work singly or in groups of between two and eight (2-8) people. Larger groups are needed particularly at sites with numerous large generators and when employees are required to carry buckets of oil to change the oil in generator engines.  Work at a site may last for a single day or several weeks.

67.     Plaintiff and similarly situated employees sometimes go to the Shop in the morning

14

to pick up any materials required for their work on a particular day, such as oil, filters, gaskets and rags.

68.    Upon information and belief, approximately 25% of the work performed by Plaintiff and similarly situated employees was performed pursuant to Public Works Contracts.

69.    Plaintiffs are members of the International Association of Machinists, Local 447.

70.    In addition to Plaintiff's wages, Plaintiff received certain benefits from Defendants including medical, health, dental and pension.

71.    Plaintiff typically work between six and seven (6-7) days per week for a total of between fifty and seventy (50-70) hours per week and sometimes longer, up to approximately eighty (80) hours per week, particular if he worked an overnight shift.  Plaintiff is typically guaranteed work for at least a six (6) hour day and typically works significantly longer, between eight and twelve (8-12) hours per day and sometimes more.  Plaintiff sometimes worked at night on contracts where Defendants are on-call for generator issues.

72.    Plaintiff was paid straight-time rates for hours worked between 7:00 am and 3:30 pm.  Plaintiff typically took an unpaid thirty (30) minute lunch break.

73.    Plaintiff was paid one and one-half (1.5) times his hourly rate for hours logged before 7:00 am, after 3:30 pm and on Saturdays.  Plaintiff was paid double time for Sunday work.

74.    Plaintiff received his wages by direct deposit, which he received weekly on Fridays. Plaintiff also received a paystub on Thursdays or Fridays showing his regular and overtime hours worked and regular and overtime hourly rates.

75.    Plaintiff was required to fill out certain paperwork on computer tablets, including time sheets and job tickets for each job site where he worked on a given day.  Among other

information, Plaintiff was required to log his travel time, which he typically completed and uploaded to Defendants' servers at home. Plaintiff was also required to create quotes in response to customer inquiries, which frequently required Plaintiff to speak to customers to gather the necessary information. Plaintiff estimated the number of days and number of workers needed to complete a job, send that information to GenServe, and GenServe then gives a final quote to the customer.

76.     While Plaintiff was sometimes able to complete most of his paperwork on the job, Plaintiff frequently performed his paperwork duties at home. When Plaintiff needed to only log his travel time and upload his paperwork at home, Plaintiff typically spent between five and ten (10) minutes per evening performing these duties. When Plaintiff needed to complete all of his paperwork at home, he typically spent between twenty and thirty (20-30) minutes working on paperwork. Particularly if Plaintiff worked several jobs in one day or had to create quotes paperwork, this may require up to forty-five (45) minutes of work at home. In total, Plaintiff typically spent between thirty (30) minutes and six (6) hours per week performing paperwork duties at home, and sometimes significantly more. Plaintiff was not compensated for time spent at home working on this required paperwork.

77.     Plaintiff was paid the same rate on Public Works Projects as he received for all other hours worked. Throughout the Relevant Time Period Plaintiff did not receive prevailing wages, supplemental benefits or prevailing wage overtime for time worked on Public Works Projects.

78.     Defendants also failed to pay overtime for time that Plaintiff spent completing paperwork at home, between thirty (30) minutes and six (6) hours per week.

79.    Defendants have simultaneously employed other individuals like Plaintiffs during the relevant time periods, continuing until today, to perform work as generator technicians and field service engineers.

80.    The Class Members, including generator technicians and field service engineers employed out of all three (3) offices but who performed work in New Jersey, likewise worked well in excess of forty (40) hours per week and worked on Public Works Projects.

81.    Defendants also failed to pay overtime for hours spent completing paperwork at home and prevailing wages for hours worked on Public Works Projects to Class Members.

## FIRST CAUSE OF ACTION
## FAIR LABOR STANDARDS ACT – UNPAID OVERTIME
### (Brought on Behalf of Plaintiff and the Collective Action Members)

82.    Plaintiff, on behalf of himself and the Collective Action Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

83.    The overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et seq.*, and the supporting federal regulations, apply to Defendant and protect Plaintiff and the Collective Action Members.

84.    Defendants have failed to pay Plaintiff and the Collective Action Members at the correct overtime wages for all of the hours they worked in excess of forty (40) hours in a workweek.

85.    As a result of Defendants' violations of the FLSA, Plaintiff and the Collective Action Members have been deprived of overtime compensation and other wages in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment

interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. §§ 201 *et seq.*

86.     Defendants' unlawful conduct, as described in this Class and Collective Action Complaint, has been willful and intentional.  Defendants were aware or should have been aware that the practices described in this Class and Collective Action Complaint were unlawful. Defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiff and the Collective Action Members.

87.     Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. §§ 201 *et seq.*

**SECOND CAUSE OF ACTION**
**NEW JERSEY STATE WAGE AND HOUR LAW – UNPAID OVERTIME**
**(Brought on Behalf of Plaintiff and the Class Members)**

88.     Plaintiff, on behalf of himself and the Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

89.     Defendants willfully violated Plaintiff's and Class Members' rights by failing to pay overtime compensation at a rate of not less than one and one-half times the regular rate of pay for hours worked in excess of forty (40) each week, in violation of the NJWHL and the regulations promulgated thereunder.

90.     Defendants' failure to pay overtime premium compensation caused Plaintiff and the Class Members to suffer loss of wages and interest thereon. Plaintiff and the Class Members are entitled to recover from Defendants their unpaid overtime compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and distributions of the action pursuant to NJWHL §§ 34:11-56a4 *et seq.*

18

## THIRD CAUSE OF ACTION
## NEW JERSEY PREVAILING WAGE ACT – UNPAID PREVAILING WAGE
### (Brought on Behalf of Plaintiff and the Class Members)

91.     Plaintiff, on behalf of himself and the Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

92.     New Jersey Statute 34:11-56:40 provides that "if any workman is paid less than the prevailing wage to which such workman is entitled under the provision of this act such workman may recover in a civil action the full amount of such prevailing wage less any amount actually paid to him or her by the employer, together with costs and such reasonable attorney's fees."

93.     Defendants willfully failed to pay Plaintiff and other Class Members the Prevailing Wage and supplemental benefits for Workmen on State funded projects in violation of the New Jersey Prevailing Wage Act.

94.     As a result of Defendants' failure to pay Plaintiff and Class Members at prevailing wage rates, he is entitled to relief from Defendants for unpaid wages pursuant to the New Jersey Prevailing Wage Act.

## FOURTH CAUSE OF ACTION
## VIOLATION OF N.J.S.T. 2A:44-148
### (Brought on Behalf of Plaintiff and the Class Members)

95.     Plaintiff, on behalf of himself and the Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

96.     Defendants willfully failed to pay Plaintiff and other Class Members the Prevailing Wage and supplemental benefits for Workmen on State funded projects in violation of the New Jersey Prevailing Wage Act.

97.     As a result of Defendants' failure to pay Plaintiff and Class Members at prevailing wage rates, he is entitled to relief from Defendants for unpaid wages pursuant to the New Jersey Prevailing Wage Act.

**FIFTH CAUSE OF ACTION**
**NEW JERSEY COMMON LAW – BREACH OF FIDUCIARY DUTY**
**(Brought on Behalf of Plaintiff and the Class Members)**

98.     Plaintiff, on behalf of himself and the Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

99.     New Jersey law imposes a trust on all monies paid to contractors for the benefit of workers and materialmen who provide labor and materials on construction projects.

100.    Consequently, the Defendants, individually and jointly, have a fiduciary responsibility to Plaintiff to ensure the payment of prevailing wages to the Plaintiff and the Class Members.

101.    On information and belief, the Defendants have diverted the monies received from the State of New Jersey, the public utility, or other government entity and allocated such funds for improper purposes or purposes other than the payment of wages due the Plaintiff and proposed class.

102.    By reason of these willful violations, the Defendants are individually and jointly liable to Plaintiff and Class Members for an amount to be determined at trial, plus costs, fees and

20

interest.

## SIXTH CAUSE OF ACTION
## NEW JERSEY COMMON LAW – BREACH OF CONTRACT (Pled in the Alternative)
### (Brought on Behalf of Plaintiff and the Class Members)

103.    Plaintiff, on behalf of himself and the Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

104.    Upon information and belief, the Public Works Contracts entered into by Defendants contained schedules of the prevailing rates of wages and fringe benefits promulgated by the New Jersey Commissioner of Labor or other controlling governmental agencies, entities, or authorities to be paid to Plaintiff and the employees performing work pursuant to such contracts pursuant to the NJWHL §§ 34:11-56.

105.    Those prevailing rates of wages and supplemental benefits were made part of the Public Works Contracts for the benefit of the Plaintiff and the other employees performing work pursuant to such contracts. In the event that the contracts or agreements entered into failed to explicitly contain prevailing wage schedules, the prevailing wage requirements were supplemented as a matter of law, requiring Defendants to pay the Plaintiffs and Class Members prevailing wages, daily/weekly overtime and supplemental benefits for all work performed.

106.    Defendants' failure to pay Plaintiff at the correct prevailing wage rates for straight time, overtime, and supplemental benefits for work performed on Public Works Projects constituted a material breach of the contracts entered into directly or indirectly between Defendants and certain public entities.

107.    As a result of Defendants' failure to pay Plaintiff at prevailing wage rates, he is

21

entitled to relief from Defendants for unpaid wages pursuant to the New Jersey Common Law.

## SEVENTH CAUSE OF ACTION
## UNJUST ENRICHMENT & QUANTUM MERUIT (Pled in the Alternative)
### (Brought on Behalf of Plaintiff and the Class Members)

108.    Plaintiff, on behalf of himself and the Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

109.    Based on Defendants' failure to pay Plaintiff and the Class Members the appropriate prevailing wage rates, Defendants were unjustly enriched at the expense of Plaintiff.

110.    Equity and good conscience require that Defendants pay restitution to Plaintiff and Class Members.

111.    Upon information and belief, when Defendants entered into the contract, they agreed to pay the required prevailing wages, overtime, shift-differential and holiday premiums, and supplemental benefit rates of pay to Plaintiff and other employees who performed work pursuant to the contracts.

112.    Plaintiff and Class Members provided valuable services to Defendants performing prevailing wage jobs for which Plaintiff and Class Members expected compensation.  Defendants knowingly accepted such services yet failed to pay Plaintiff the reasonable value of such services as defined by the New Jersey State prevailing wage schedules.

113.    As a result of Defendants' failure to pay Plaintiff at prevailing wage rates on prevailing wage jobs and Defendants' corresponding unjust enrichment, Plaintiff and Class Members are entitled to relief from Defendants under New Jersey's common law of unjust enrichment.

114.    As a result of Defendants' failure to pay Plaintiff the reasonable value of the

22

valuable services they rendered, Plaintiffs are entitled to relief from Defendants under New Jersey's common law of quantum meruit.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the Collective Action Members and Class Members respectfully requests that this Court grant the following relief:

(a)  Designation of this action as a collective action on behalf of the Collective Action Members and ordering the prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b) and appointing Plaintiff and his counsel to represent the Collective Action Members;

(b)  Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (3) on behalf of the Class, appointment Plaintiff and his counsel to represent the Class and ordering appropriate monetary, equitable and injunctive relief to remedy Defendants' violation of New Jersey State Law and the common law; .

(c)  An order tolling the statute of limitations;

(d)  A declaratory judgment that the practices complained of herein are unlawful under New Jersey State Law and New Jersey Common Law;

(e)  An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with Defendants, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

23

(f)     An award of compensatory damages as a result of the Defendants' willful failure to pay overtime compensation pursuant to the FLSA and NJWHL, and supporting regulations;

(g)     An award of liquidated and/or punitive damages as a result of the Defendants' willful failure to pay overtime compensation pursuant to the FLSA and the NJWHL and supporting regulations;

(h)     An award of monetary damages to be proven at trial for all unpaid prevailing wages, daily/weekly overtime and supplemental benefits owed to Plaintiff and the Class;

(i)     An award of prejudgment and post judgment interest;

(j)     An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

(k)     Such other and further relief as this Court deems just and proper.

### DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all questions of fact raised by the Complaint.

24

Dated: New York, New York
       February 23, 2018

Respectfully submitted,

**PELTON GRAHAM LLC**

By: _____
Taylor B. Graham, Esq. (TG 9607)
Brent E. Pelton, Esq.
Alison L. Mangiatordi, Esq.
111 Broadway, Suite 1503
New York, New York 10006
Telephone: (212) 385-9700
Facsimile: (212) 385-0800

*Attorneys for Plaintiff and the putative collective and class*

25

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of GenServe and/or its respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me prevailing wages and overtime wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being **named as the representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. I understand that I will be represented by Pelton Graham LLC without prepayment of costs or attorneys' fees. I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first. I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf. I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.


_____
Signature

_____
Printed Name