IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARIO RODRIGUEZ, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>-against-<br><br><br>GENSERVE, INC., GENERATOR HOLDING CORPORATION, ROBERT FORTUNATO, MICHAEL VAHLING, and JOSEPH FLYNN, Jointly and Severally,<br><br>Defendants. | 18 Civ. 2641 (JMV)(MF) |

**DECLARATION OF TAYLOR B. GRAHAM IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE SETTLEMENT**

I, Taylor B. Graham, declare as follows:

1. I am an attorney admitted before this Court. I am a partner of the firm of Pelton Graham LLC ("Pelton Graham") in New York, New York, Class Counsel herein. Pelton Graham is a New York City based law firm that devotes at least ninety percent (90%) of its practice to representing plaintiffs in individual, collective and class action litigation seeking to recover unpaid wages, unpaid prevailing wages, and unpaid overtime compensation. Pelton Graham has been appointed as class counsel in every one of these cases which have reached class certification or settled on a class action basis.

2. I am one of the lawyers primarily responsible for the prosecution of Plaintiff's claims against Defendants in the following action: *Mario Rodriguez v. Genserve, Inc., et al.*, 18 Civ. 2641 (JMV)(MF) (hereinafter referred to as the "Action").

3. I make these statements based on personal knowledge and would so testify if called as a witness at trial.

**Notification to the Class**

4. As set forth in the Settlement Agreement, attached hereto as **Exhibit A**, Class Counsel and Defendants' counsel agreed to a list of forty-eight (48) Class Members eligible to recover from the class settlement of this Action. (Sttmt Agmt. § 1.5). All Class Members who did not opt-out of the settlement are eligible to participate in the settlement. (*Id.* § 2.12(C); Dkt. No. 10-1).

5. The parties agreed to retain American Legal Claim Service LLC ("ALCS") as a neutral third party to administer the settlement. The Declaration of Keith Salhab setting forth the work performed and work to be performed in the future by ALCS in this Action ("Salhab Decl.") is attached hereto as **Exhibit B**.

6. Pursuant to the Settlement Agreement and the Order of the Court granting preliminary approval of the settlement (Dkt. No. 11; Sttmt. Agmt. § 2.10(A)), counsel for Defendants provided ALCS with a list of Class Members, their contact information and their allocation amounts based on the formula agreed to by the parties. ALCS prepared the final list used to send the Class Notice and finalized addresses using commercially reasonable means. (Salhab Decl. ¶ 3).

7. The Settlement Agreement provides for a complex allocation formula that calculates each Class Member's *pro rata* share of the Settlement Amount as a function of that individual's total hours worked, time worked performing generator service work subject to the New Jersey Prevailing Wage Act on New Jersey public works projects, and the rates actually paid by Defendants to each individual for such work. (Sttmt Agmt § 3.3(A)).

8.  On May 11, 2018, ALCS mailed the Class Notice via the United States Postal Service to all forty-eight (48) Class Members. (Salhab Decl. ¶ 5).

9.  Four (4) Notice packages were returned to ALCS as undeliverable. ALCS used commercial reasonable means to locate current addresses for each individual whose Notice package was returned. Of the four (4) Notice packages returned to ALCS, ALCS was able to locate updated addresses for three (3) individuals and re-mailed the Notice packages. One (1) Class Notice was ultimately deemed undeliverable. (Salhab Decl. ¶¶ 6-7).

10. The Class Notice advised Class Members of applicable deadlines and other events, including the Final Approval Hearing, how Class Members could participate in the Settlement, and how Class Members could obtain additional information regarding the case and settlement. (*See* Dkt. No. 10-1).

11. ALCS estimates that its settlement administration costs will total $6,000. (Salhab Decl. ¶ 14). In our experience, this amount is well within the range of claims administration fees charged in comparable wage and hour actions.

12. Defendants have agreed to bear the settlement administration costs separately from the settlement of this action. In other words, the administration costs will not be deducted from the Settlement Fund. (Sttmt. Agmt. § 1.31).

**The Reaction of the Class to the Settlement Has Been Positive**

13. Throughout this Action, and since the settlement, Class Counsel have received telephone calls from the Named Plaintiff and Class Members and answered their questions about the settlement.

14. The responses to the Class Notice has been overwhelmingly positive.

15. The Class Notice informed Class Members that they were permitted to opt-out or object to the settlement, provided the process Class Members were required to follow to opt-out

or object to the settlement, and allowed thirty (30) days for Class Members to opt-out or object. (Salhab Decl. ¶¶ 9, 13).

16. Zero (0) Class Members opted-out or objected to the settlement by the July 10, 2018 deadline to do so. (Salhab Decl. ¶¶ 9, 13).

17. Zero (0) Class Members contacted ALCS or Class Counsel to request to be included in the settlement. (Salhab Decl. ¶ 10).

18. ALCS also set up a telephone number and e-mail address that Class Members could contact in order to learn more information about the settlement. ALCS received two (2) calls and zero (0) emails regarding the settlement.(Salhab Decl. ¶¶ 11-12).

**Continued Litigation Would be Complex, Expensive, Time-Consuming and Risky**

19. Before initiation of this action (the "New Jersey Action") and continuing during the pendency of this litigation, Class Counsel initiated and settled a similar action on behalf of eight (8) individual named plaintiffs who worked for Defendants as generator technicians/engineers in New York in the New York Supreme Court, Kings County as a putative class action under C.P.L.R. § 901 on behalf of themselves and a class of similarly situated employees alleging they were not paid prevailing wages, supplemental benefits pursuant to Article 8 of the New York State Labor Law and were not paid for certain off-the-clock overtime hours they were required to work. The action in New York, *Carter, et al. v. GenServe Inc. et al.*, Index No. 516354/2016 (the "New York Action") was litigated and settled on September 28, 2017, over two (2) years after filing, with the help of Vivian Berger, Esq., established employment law mediator. Final approval of the settlement was granted by Hon. Francois A. Rivera on July 20, 2018. (*See Carter, et al. v. GenServe, Inc. et al.*, Index No. 516354/2016, Dkt. No. 42). Many of the members of this proposed class action settlement also performed work within New York and are members of the settled New York Action.

20. The Parties engaged in formal and informal discovery in the New York Action prior to mediating that claim on September 28, 2017. As a part of the resolution of the New York Action, the Parties agreed to provide informal discovery and utilize the same methodologies with respect to the New Jersey wage and hour claims. Data entry personnel were tasked with the responsibility of reducing Defendants' payroll and time records into spreadsheets for settlement purposes so that the Parties could better analyze damages. Although labor intensive, these spreadsheets depict the number of hours worked and wages paid to the Class Members on New Jersey Public Works Projects. Once provided, Plaintiff's Counsel confirmed the wage and hour information with the Named Plaintiff plus a number of additional Class Members who are shown to have performed the most work on Public Works Projects.

21. Plaintiff's Counsel also confirmed with the New Jersey Department of Labor ("NJ DOL") regarding the scope of prevailing wage payments required to be paid for work performed on maintenance contracts, which constitutes the largest percentage of Plaintiff's work within the State of New Jersey.

22. Finally, as part of the resolution of this action, the Parties engaged in numerous email and telephone conversations, and an in-person meeting on January 31, 2018. After the in-person meeting, the Parties reached a settlement of the New Jersey Action following extensive arms' length negotiations on February 2, 2018. Thereafter, settlement documents were drafted and circulated including a settlement agreement, proposed notice to class members and implementing order, all of which were commented on by both Parties.

23. Class Counsel also fielded regular questions from the Named Plaintiff and Class Members throughout the pendency of the New Jersey Action.

24. Defendants' counsel and Class Counsel discussed at great length the legal and factual issues in this case, the accuracy of Defendants' records, and disputes regarding damages calculations and class treatment. In particular the damages analysis was especially complex in this matter, as the relevant prevailing-wage rates change frequently, only a certain type of work performed on New Jersey Public Works Projects is, in fact, entitled to prevailing wage rates and Plaintiff also alleged substantial off-the-clock work.

25. Prior to and over the course of the litigation, the parties engaged in informal and formal settlement negotiations, which were at all times conducted at an arm's length basis.

26. Although the Parties have already undertaken significant expense in litigating and settling this matter, further litigation without settlement would necessarily result in substantial additional expense and delay including briefing 216(b), class certification and summary judgment motions, additional discovery, a likely de-certification motion before trial, and an expensive and complex trial on both the merits and damages.

27. A trial on the merits would involve risks to Plaintiff because of the fact-intensive nature of proving liability under the FLSA, NJWHL, NJPWA, the complexity of New Jersey prevailing wage law, and in light of the defenses available to Defendants, which would pose risk as to both liability and damages.

28. Preparing and putting on evidence, including testimony by Defendants, Plaintiff, numerous class members and potentially experts, on the complex factual and legal issues at such a trial would consume tremendous amounts of time and resources for both sides. Trial of the damages issues, even on a representative basis, would also be costly and further defer closure.

29.     Any judgment would likely be appealed, thereby extending the duration of the litigation, and the parties would likely seek interlocutory appeals of adverse rulings on class certification and dispositive motions..

30.     This settlement, on the other hand, makes monetary relief available to class members in a prompt and efficient manner.

I declare under penalty of perjury, under 28 U.S.C. § 1746, that the foregoing is true and correct.

Executed this 18th day of September, 2018.
New York, New York

                                          */s/ Taylor B. Graham*
                                          Taylor B. Graham

**PELTON GRAHAM LLC**
111 Broadway, Suite 1503
New York, NY 10006
Telephone: (212) 385-9700
Facsimile: (212) 385-0800
Email: graham@peltongraham.com

*Attorneys for Plaintiff and the Settlement Class*